UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SERRITA A. HUGHES-CUNNINGHAM,

                Plaintiff,               05-CV-0496C

        -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

                Defendant.
_____

APPEARANCES:        JEFFREY FREEDMAN ATTORNEYS AT LAW (REGINA A. WALKER, ESQ., of Counsel), Buffalo, New York, for Plaintiff.

                      TERRANCE P. FLYNN, UNITED STATES ATTORNEY (JANE B. WOLFE, Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

Plaintiff Serrita Hughes-Cunningham initiated this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. The Commissioner has filed a motion for judgment on the pleadings, and the plaintiff has cross-moved for the same relief pursuant to Fed. R. Civ. P. 12(c).

# BACKGROUND

Plaintiff was born on March 3, 1964 (T. 43).[1]  She applied for disability insurance benefits on October 1, 2002, with an alleged disability onset date of September 25, 2001

_____

[1] References preceded by "T." are to page numbers of the transcript of the administrative record filed by defendant as part of the answer to the complaint.

(T. 43-44).  She alleges disability resulting from impairments of her back and neck secondary to a motor vehicle accident on September 25, 2001 (T. 60).  Plaintiff's application was denied initially on December 23, 2002 (T. 30-33).  Plaintiff requested a hearing, which was held on March 14, 2004 before Administrative Law Judge ("ALJ") Randall Moon (T. 233-84).  On April 29, 2004, the ALJ determined that plaintiff was not disabled and therefore entitled to neither a period of disability nor disability insurance benefits (T. 16-23).  The decision of the ALJ became the Commissioner's final decision on June 16, 2005, when the Appeals Council declined plaintiff's request for review (T. 4-6). On July 18, 2005, plaintiff instituted this action, seeking judicial review of the Commissioner's final determination.  The Commissioner filed an answer on September 20, 2005.  On December 19, 2005, the Commissioner moved for judgment on the pleadings, seeking an order affirming the ALJ's decision.  In response, on December 29, 2005,  the plaintiff filed a cross-motion for judgment on the pleadings on the ground that the ALJ's decision was not supported by substantial evidence.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir.

2

1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *See Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Winkelsas v. Apfel*, 2000 WL 575513, *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards."  *Gartmann v. Sec'y of Health & Human Servs.*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976)).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence.  *Tejada*, 167 F.3d at 773.

## II.     Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of

3

an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing the past relevant work.  If the claimant cannot perform past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy considering the claimant's age, education, past work experience, and residual functional capacity based on a series of charts provided in the regulations at 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids").  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment since the date of the alleged disability onset, September 25, 2001 (T. 22).  In reviewing plaintiff's medical records, the ALJ found that the plaintiff suffered from back pain, status post anterior lumbar interbody fusion at L5-S1, neck sprain/strain, and obesity. The ALJ found these impairments to be severe for purposes of 20 C.F.R. § 404.1520(c). The ALJ further found, however, that plaintiff's impairments, individually or in combination, failed to meet or equal the requirements of the Listings (T. 18).  Proceeding to the fourth step in the sequential evaluation process, based on the medical records and the testimony

4

of the vocational expert and plaintiff, the ALJ found that plaintiff retained a residual functional capacity for a significant range of light work.  The ALJ found that plaintiff could sit for up to six hours in an eight-hour work day and could stand and walk for up to six hours in an eight-hour day, but not for more than thirty minutes at a time.  Additionally, the ALJ determined that the plaintiff's residual functional capacity precludes her from performing any of her past relevant work.  Proceeding to the fifth step in the sequential evaluation process, the ALJ relied on the testimony of the vocational expert in noting that, notwithstanding plaintiff's exertional limitations, plaintiff could be gainfully employed in a significant number of jobs in the national economy, including a mail room clerk and small parts assembler.  Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act at any time since the alleged onset of her disability (T. 22).

The Commissioner contends that the ALJ's findings are supported by substantial evidence.  Plaintiff contends that the ALJ, in finding plaintiff not disabled, misapplied the established legal and regulatory standards by failing to give proper weight to the medical opinions of plaintiff's treating physicians, improperly discrediting plaintiff's allegations of pain, and failing to give due consideration to all of plaintiff's impairments.

## III.    The Medical Evidence

On September 25, 2001, plaintiff, complaining of neck and low back pain following a motor vehicle accident, was treated at Erie County Medical Center (T. 96).  The initial diagnosis by the emergency room physician, Dr. Dietrick Jehle, was a cervical/low back strain (T. 96).  X-rays of plaintiff's cervical and lumber spine were negative (T. 98-99).

On November 15, 2001, an MRI of plaintiff's lumbar spine revealed advanced L5-S1 disc degeneration with a moderate disc bulge and more focal far left lateral protrusion. The MRI also revealed facet hypertrophy with mild foraminal stenosis (T. 150). A subsequent MRI of plaintiff's cervical spine performed on January 9, 2002 showed no evidence of stenosis or herniation (T. 139).

Plaintiff sought a course of treatment with chiropractor Dr. Julius Horvath from October 1, 2001 through September 25, 2002 (T. 107-21). Dr. Horvath initially noted that plaintiff had full strength in her upper and lower extremities. There was a decreased range of motion in both the cervical and lumbar spines (T. 117). On January 23, 2002, Dr. Horvath noted that plaintiff had a decreased sensation to pin prick and light touch of the C6 dermatome. Plaintiff tested positive for foramina compression, Jackson's maneuver, and shoulder depressor. Plaintiff had a decreased range of motion of both the head and neck in all planes, along with muscle weakness of the bicep, deltoid, and tricep on the left (T. 132).

On January 30, 2002, plaintiff was evaluated by neurosurgeon Dr. Jeffrey Lewis (T. 215-17). Dr. Lewis read the January 9, 2002 MRI of plaintiff's cervical spine as showing a small central disc herniation at C6-C7. Dr. Lewis read the November 15, 2001 MRI of plaintiff's lumbar spine as showing a prominent degenerative disc herniation with annular tear at L5-S1 (T. 215). Dr. Lewis noted that plaintiff had a restricted range of motion of the lumbar spine and a mildly restricted range of motion of the cervical spine. Plaintiff showed normal motor and reflex functions in the lower extremities and had a normal gait. Dr. Lewis recommended intradiscal electrothermy treatment ("IDET") for the discogenic pain and annular tear at L5-S1 (T. 216).

6

Plaintiff was also examined by chiropractor Dr. Paul Bluestein on February 18, 2002 at the request of plaintiff's insurance company (T. 127-29).  Dr. Bluestein observed that plaintiff walked without difficulty.  Plaintiff's motor function in the upper extremities was within normal limits.  Sensory function was normal in the right upper extremities but generally diminished in the left upper extremities.  Plaintiff's motor function in the lower extremities was also within normal limits.  Sensory function was normal in the lower extremities except for diminished sensation in the left lateral leg and the top of the left foot.  Dr. Bluestein diagnosed a herniation of the L4-L5 disc with L4 radiculopathy and concurrent traumatic myofascitis of the psoas and paraspinal musculature bilaterally (T. 128-29).

On March 4, 2002, Dr. Lewis performed the IDET procedure (T. 178-82).  On March 13, 2002, Dr. Lewis reported that the plaintiff complained of an aggravation of pain since the procedure (T. 213).  Dr. Lewis then recommended that plaintiff undergo an anterior lumbar fusion at L5-S1 (T. 214).  The fusion surgery was performed on April 30, 2002 (T. 192-201).  On June 24, 2002, Dr. Lewis reported that plaintiff had good relief of her leg pain but still suffered from some residual back pain (T. 209).  On October 31, 2002, Dr. Lewis reported that plaintiff had continued to improve and had 30 to 40 percent resolution of preoperative back pain (T. 205).  On December 27, 2002, Dr. Lewis reported that plaintiff continued to have some diffuse lower back pain associated with the fusion surgery, but that the pain was manageable (T. 204).  On March 21, 2003, Dr. Lewis reported that plaintiff's back pain had significantly improved.  Dr. Lewis recommended that plaintiff continue on a course of conservative treatment (T. 202).  In his final report from August 6, 2003, Dr. Lewis reported that plaintiff's cervical herniation was continuing to

7

cause some pain, but that surgery was not required at that time.  Dr. Lewis referred plaintiff

back to Dr. Horvath for continued chiropractic treatments and scheduled a follow-up visit

one year later (T. 218).  Throughout Dr. Lewis's treatment of plaintiff, he continually opined

that plaintiff was totally disabled.

On September 3, 2003, plaintiff was examined by Dr. William Capicotto (T. 225-27).

Dr. Capicotto found that plaintiff suffered a traumatic L5-S1 disc herniation and a C5-C6

disc herniation from the motor vehicle accident on September 25, 2001 (T. 226).   Dr.

Capicotto noted that plaintiff reported lower back pain which was manageable at times, as

well as severe neck pain, but advised against cervical surgery to address the C5-C6

herniation.  Dr. Capicotto opined that plaintiff was totally disabled (T. 227).

## IV.    Other Evidence

Plaintiff testified that she typically gets five hours of interrupted sleep during the

night  (T. 275-76).  Plaintiff arises at 6 a.m. to wake her children for school before returning

to bed.  All of plaintiff's children eat breakfast at school, but she sometimes prepares lunch

for her husband (T. 260-61).   Plaintiff spends the remainder of her day doing various

activities.  Plaintiff is able to attend to her personal needs and hygiene without aid (T. 270).

Plaintiff does not see a physical therapist but does some stretching exercises herself while

at home (T. 252-53).  Plaintiff washes the dishes and does some laundry if there is only

a small amount of clothing.  Plaintiff drives herself every other day to either do grocery

shopping or visit her mother.  Plaintiff is always accompanied whenever she goes grocery

shopping, which normally takes an hour to an hour and a half.  Plaintiff is able to walk

through the store herself (T. 262-63). Each afternoon, plaintiff lies down for approximately

one half-hour to alleviate pain in her neck and lower back (T. 273). Plaintiff also testified that she has no difficulty handling small objects but sometimes drops things (T. 275).

## V.    The Treating Physicians' Opinions

Plaintiff contends that the ALJ erred by failing to give proper consideration to the opinions of Dr. Lewis and Dr. Capicotto. Both Dr. Lewis and Dr. Capicotto opined that plaintiff was totally disabled. In his decision, the ALJ noted that he had "considered the opinions of both Dr. Lewis and Dr. Capicotto that the claimant is disabled but based on all the evidence of record including the medical evidence I do not find their opinions entitled to controlling weight" (T. 19).

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ." 20 C.F.R. § 404.1527(d)(2). However, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" *Snell v. Apfel*, 177 F.3d 128, 133 (2d. Cir. 1999) (quoting 20 C.F.R. § 404.1527(e)(1)). Therefore, Dr. Lewis's and Dr. Capicotto's opinions that plaintiff is totally disabled and unable to work can never be given controlling weight, as the matter is reserved to the Commissioner. *Snell v. Apfel*, 177 F.3d at 133.

Nevertheless, the regulations provide that the ALJ must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. Social Security Ruling 96-5p, 1996 WL 374183 (July 2, 1996). The Commissioner is required to "review all of the medical findings and other evidence that

9

support a medical source's statement that [claimant is] disabled . . . ."  20 C.F.R. § 404.1527(e)(1).

In his opinion, the ALJ stated that "neither [Dr. Capicotto nor Dr. Lewis] stated any functional limitations but only indicated that claimant was totally disabled which is an opinion reserved for the Commissioner" (T. 19).   While a lack of medical evidence is a factor that the ALJ should consider in determining an opinion of disability, the case law is also clear that the Commissioner has an affirmative duty to develop the administrative record in this regard.  *See Schaal v Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating source] *sua sponte*.")  If troubled by any apparent inconsistencies between the treating physicians' records and their opinions that plaintiff was totally disabled, the ALJ had a duty to seek out additional information from both Dr. Lewis and Dr. Capicotto for purposes of clarification.  *See Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998).

The ALJ also discussed the opinions found in two independent medical examinations.  Dr. Hallac, a neurosurgeon, and Dr. Leddy, a sports medicine physician, both opined that plaintiff suffered from a lumbar and cervical spine strain stemming from the motor vehicle accident on September 25, 2001 (T. 19).  Neither of these opinions was part of the record, and there is no indication that the ALJ requested and reviewed the records of Dr. Hallac and Dr. Leddy.  Even though any consideration of evidence outside the record is inappropriate, the real issue is whether its inclusion harmed the plaintiff.  *See, e.g.*, *Nelson v. Apfel*, 131 F.3d 1228, 1236-37 (7th Cir. 1997) (finding that "[t]he ALJ's consideration of this extra-record evidence was incidental to his decision.")  In this case, the ALJ's consideration of the opinions of Dr. Hallac and Dr. Leddy cannot be said to have

been incidental to the decision.  The ALJ specifically cited to the opinions for rebuttal of Dr. Lewis's and Dr. Capicotto's opinions that plaintiff was disabled.  Therefore, the extra-record evidence had a direct bearing on the dispositive issue in this case.  If the ALJ wanted to consider the opinions of Dr. Hallac and Dr. Leddy, he had a duty to add their medical records to the administrative record.

After careful review, I find that the ALJ failed to perform his duty to fully develop the administrative record, and therefore a remand is necessary.

## VI.    Credibility of Claimant's Testimony

Plaintiff contends that the Commissioner erred in finding plaintiff's testimony not entirely credible as to the disabling nature and severity of her symptoms and functional limitations.  The ALJ concluded that "[t]he evidence of the record establishes a basis for a degree of pain and functional limitation associated with the claimant's impairments, but it fails to support the disabling degree alleged by the claimant" (T. 19).  When an ALJ discredits hearing testimony, he or she must articulate the reasons for doing so "with sufficient specificity to permit intelligible plenary review of the record."  *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988).

When the alleged symptoms suggest greater severity of impairment than the objective medical evidence alone, the ALJ considers all the evidence submitted and considers "the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence . . . ."  20 C.F.R. § 404.1529(c)(4).  The ALJ will also consider other factors, such as daily activities, the location, duration, frequency, and intensity of symptoms, the type, effectiveness, and side effects of medication, and other treatment or

measures taken to relieve those symptoms.   See 20 C.F.R. § 416.929(c)(3); Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).

Here, the ALJ failed to follow the legal standards required when determining the credibility of testimony regarding symptoms.  The medical record shows "the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. 423(d)(5)(A).  However, the ALJ found that the objective medical findings did not support plaintiff's allegations of disabling pain.  In resolving this conflict, the ALJ considered plaintiff's daily activities and found that plaintiff had "testified to a fairly lengthy list of daily activities and further indicated that she is able to care for four children."  The ALJ specifically noted that plaintiff usually drives to the grocery store or to her mother's home.  The ALJ also stated that plaintiff had a motive to exaggerate her symptoms for secondary gain during the time period because she was receiving "no fault" insurance payments and has a pending lawsuit (T. 19).

In the present case, the ALJ had a duty to consider factors other than simply daily activity when determining plaintiff's credibility.  With the exception of plaintiff's daily activity, the ALJ failed to discuss any of the factors listed in 20 C.F.R. § 416.929(c)(3).  *See, e.g.*, *Vasquez v. Barnhart*, 2004 WL 725322, *11 (E.D.N.Y. March 2, 2004) ("[O]f the seven factors that the ALJ must consider in making a credibility determination . . ., he considered only the first, plaintiff[']s daily activities. This in itself was error.").  The ALJ cannot disregard testimony in a credibility determination by simply reciting the factors to be considered under 20 C.F.R. § 416.929(c)(3).  *Lugo v. Apfel*, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998).

Furthermore, although the ALJ states that the plaintiff was able to care for her four children (T. 19), the record shows that her care involved only the preparation of light meals

12

and basic household chores (T. 260-65).  Additionally, the ALJ failed to specify the "lengthy list of daily activities" (T. 19) in which he found that plaintiff engaged.  Even had the ALJ specifically enumerated the "lengthy list of daily activities" in which plaintiff engaged, the ALJ had an additional duty to explain specifically how any of the daily activities were indicative of an ability to work.  *See Mackey v. Barnhart*, 306 F. Supp. 2d 337, 344 (E.D.N.Y. 2004) (finding that the ALJ did not adequately explain how claimant's activities of attending church, going to the store, and exercising contradicted claimant's testimony of constant and intractable pain.)  Here, the ALJ failed to discuss how plaintiff's ability to drive and do some daily activities is evidence that she is capable of working.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (daily activities may be used to show that a claimant can work, but only insofar as there is evidence the claimant engaged in the activities for "sustained periods comparable to those required to hold a job.")  The record reveals that plaintiff was unable to engage in any daily activity for a sustained period of time, such as sitting or standing, without periods of rest because of pain (T. 260, 262).

Finally, the ALJ's allegation that plaintiff had a motive to exaggerate her condition was purely speculative and inappropriate.  There is no testimony or evidence in the record to suggest plaintiff was exaggerating her pain for monetary reasons.

On remand, therefore, the ALJ 's assessments of plaintiff's credibility should be based on accurate depictions of the representations made by plaintiff and a full evidentiary record, supplemented by further fact-gathering as needed.  Additionally, a more thorough analysis and discussion of the evidence as it relates to plaintiff's work capacity is required.

**VII.    Plaintiff's Residual Functional Capacity**

Plaintiff contends that the ALJ failed to properly assess plaintiff's residual functional capacity ("RFC") when the ALJ found that plaintiff was able to perform a wide range of sedentary work and a limited range of light work.  Specifically, the ALJ found that plaintiff could sit for up to six hours in an eight-hour work day, and could stand or walk for up to six hours in an eight-hour work day, but for no more than one half-hour at a time (T. 22).

An RFC assessment is based on relevant medical and other evidence, and measures an "individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week . . . ."  Social Security Ruling 96-9p, 1996 WL 362208 (July 2, 1996).  Because the Social Security Act is remedial and thus broadly construed and liberally applied, the Commissioner must make a thorough inquiry into the objective medical facts, diagnoses, or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience.  *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983).

Plaintiff contends that the ALJ failed to make a thorough inquiry in his RFC determination by not considering the combined effect of plaintiff's several physical impairments, specifically obesity.  Under the Social Security Regulations, where a claimant has alleged several impairments, the ALJ is obligated to consider the disabling effect of the combination of plaintiff's impairments without regard to whether any one impairment, if considered separately, would be disabling.  *See* 20 C.F.R. § 404.1523; *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995).  Although obesity is no longer an impairment in the Listings under 20 C.F.R. § 404, Subpart P, Appendix 1, obesity is still "consider[ed] . . . to be a medically determinable impairment," and the ALJ must "consider its effects when

14

evaluating disability." *Devora v. Barnhart*, 205 F. Supp. 2d 164, 175 (S.D.N.Y. 2004) (quoting Social Security Ruling 00-3p, 2000 WL 574779 (May 15, 2000)).  In this case, there is nothing in either the ALJ's decision or the transcripts of the hearing that suggest that there was any consideration given to plaintiff's obesity.

Where the court finds that the Commissioner's determination was based on a misapplication of legal standards, substantial evidence review is inappropriate as it "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  Where the court "cannot say with certainty . . . whether further clarification of the record with [the appropriate] regulations in mind might alter the weighing of the evidence  . . . ," remand to the Commissioner is required.  *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).  Given the uncertainty of the impact that any consideration of plaintiff's obesity might have on the RFC determination, a remand is appropriate.

On remand, therefore, the ALJ 's assessments of plaintiff's RFC should be based on a thorough consideration of all plaintiff's impairments including, but not limited to, obesity, and a full evidentiary record supplemented by further fact-gathering as needed.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and plaintiff's cross-motion is granted.  This case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. 405(g) for further proceedings consistent with this opinion.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN
United States District Judge

Dated: September 6    , 2006
p:\opinions\05-496.aug1506remand